CATHY BAKER, Plaintiff-Appellant, v. GRACE MILLER, d/b/a Miller's Metropole, *et al.*, Defendants-Appellees.

Fourth District    No. 4—92—0533

Opinion filed March 18, 1993.

Gary G. Johnson, of Bloomington, for appellant.

Rex L. Reu, of Bloomington, for appellees.

JUSTICE GREEN delivered the opinion of the court:

Article I, section 17, of the Illinois Constitution of 1970 (Constitution) states as follows:

> "All persons shall have the right to be free from discrimination on the basis of race, color, creed, national ancestry and sex in the *hiring and promotion practices of any employer* or in the sale or rental of property.
>
> *These rights are enforceable without action by the General Assembly, but the General Assembly by law may establish reasonable exemptions relating to these rights and provide additional remedies for their violation.*" (Emphasis added.) Ill. Const. 1970, art. I, §17.

The Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1991, ch. 68, par. 1—101 *et seq.*) sets forth prohibitions against various types of discrimination, including that set forth above, and creates an Illinois Human Rights Commission (Commission) (Ill. Rev. Stat. 1991, ch. 68, par. 8—101), the powers of which include hearing and deciding claims of violations of the Act. Section 8—111(C) of the Act states:

> "Except as otherwise provided by law, no *court* of this state shall have jurisdiction over the subject of an *alleged civil rights violation* other than as set forth in this Act." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 68, par. 8—111(C).

On March 17, 1992, plaintiff Cathy Baker filed a two-count civil complaint in the circuit court of McLean County against defendants Grace Miller, d/b/a Miller's Metropole, and Richard Yeast alleging defendants terminated her employment at Miller's Metropole on the basis she was a female, in violation of article I, section 17, of the Constitution. Count I charged Miller as the operator of the business, and count II charged Yeast as Miller's agent who actually discharged her. On defendants' motion pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615), the circuit court dismissed the complaint with prejudice on June 2, 1992, determining the language of section 2—101(B)(1)(a) of the Act (Ill. Rev. Stat. 1991, ch. 68, par. 2—101(B)(1)(a)) "is a reasonable exemption as set forth in [s]ection 17 of [a]rticle I of the Constitution of the State of Illinois and that when such an exemption is adopted by the General Assembly, no person falling within the exempt category can make a claim grounded

upon the constitutional provisions stated in [a]rticle I, [s]ection 17." Plaintiff has appealed. We affirm.

One of defendants' contentions in support of the dismissal of the complaint is that plaintiff has no cause of action under the cited constitutional provision because it merely bars discrimination in "hiring and promotion practices" and plaintiff's alleged discharge does not involve "hiring" or "promotions." The various districts of the appellate court are in disagreement on that question. (Compare *Ritzheimer v. Insurance Counselors, Inc.* (1988), 173 Ill. App. 3d 953, 527 N.E.2d 1281; *Thakkar v. Wilson Enterprises, Inc.* (1983), 120 Ill. App. 3d 878, 458 N.E.2d 985; *Greenholdt v. Illinois Bell Telephone Co.* (1982), 107 Ill. App. 3d 748, 438 N.E.2d 245.) As we affirm for other reasons, we need not rehash this issue.

Article 2 of the Act (Ill. Rev. Stat. 1991, ch. 68, pars. 2—101 through 2—105) concerns discrimination in employment but limits those who are subject to prohibitions of the Act as "employers," with exceptions not involved here, to those who employ "15 or more employees within Illinois during 20 or more calendar weeks within the calendar year of or preceding the alleged violation" (Ill. Rev. Stat. 1991, ch. 68, par. 2—101(B)(1)(a)). The parties are in agreement that if defendant Miller was an employer within the meaning of section 2—101(B)(1)(a) of the Act (Ill. Rev. Stat. 1991, ch. 68, par. 2—101(B)(1)(a)), section 8—111(C) of the Act, which speaks of courts' lack of jurisdiction over cases concerning an "alleged civil rights violation" (Ill. Rev. Stat. 1991, ch. 68, par. 8—111(C)), would deny plaintiff the right to proceed in the circuit court. *Dilley v. Americana Healthcare Corp.* (1984), 129 Ill. App. 3d 537, 472 N.E.2d 596; see *Thakkar*, 120 Ill. App. 3d 878, 458 N.E.2d 985.

Plaintiff points out that unlike in *Dilley* and *Thakkar*, she alleged in count I of her complaint that, at times pertinent, defendant Miller employed fewer than 15 persons. Plaintiff contends that she has no recovery under the Act and thus is not prevented by the terms of section 8—111(C) of the Act from suing at law. Her position is supported by *Ritzheimer*. That court reversed the dismissal of a count of a complaint by a plaintiff against her employer, who employed fewer than 15 employees, claiming she was discharged because of her gender in violation of article I, section 17, of the Constitution. The basis of the decision was that, as the plaintiff had no remedy under the Act, she was not prevented from suing in the circuit court under the constitutional provision.

The *Ritzheimer* analysis begins with consideration of section 1—103(D) of the Act (Ill. Rev. Stat. 1991, ch. 68, par. 1—103(D)), which

sets forth that the phrase " '[c]ivil rights violation' includes and shall be limited to only those specific acts" which are set forth in certain described sections of the Act. One such section is section 2—102(A) of the Act, which prohibits discrimination by "employers" (Ill. Rev. Stat. 1991, ch. 68, par. 2—102(A)). Thus, as that defendant employed fewer than 15 people, that court concluded the alleged discrimination involved there was not a civil rights violation within the meaning of section 2—102(A) or any other section of the Act. As that was so, section 8—111(C) of the Act, which prohibited court proceedings for an "alleged civil rights violation" (Ill. Rev. Stat. 1985, ch. 68, par. 8—111(C)), did not prevent a circuit court action for that type of a violation of article I, section 17, of the Constitution. *Ritzheimer*, 173 Ill. App. 3d at 961-62, 527 N.E.2d at 1286-87.

The *Ritzheimer* court deemed the foregoing statutory language so clear that no further interpretation was necessary. However, if such was necessary, that court concluded that the drafters of article I, section 17, of the Constitution would not have intended that the plaintiff there be left without remedy. That court recognized that article I, section 17, speaks of the legislature providing for "reasonable exemptions" and that the record of proceedings at the constitutional convention indicated a discussion by delegates that exemptions for small employers would be reasonable. However, the *Ritzheimer* court concluded that no such exemptions had been granted by the legislature. The court then stated:

> "Nothing in the Illinois Human Rights Act suggests that small employers should be left to discriminate as they wish. Rather than excuse any class of employers from its obligations under article I, section 17, of the Constitution, what the Act does instead is simply to impose greater restrictions on and provide additional remedies for claims of discrimination against employers of a certain size." *Ritzheimer*, 173 Ill. App. 3d at 963, 527 N.E.2d at 1288.

The *Ritzheimer* analysis is that (1) the wording of the Act clearly requires that employers not covered by the "15 or more employees" provision of section 2—101(B)(1)(a) of the Act (Ill. Rev. Stat. 1991, ch. 68, par. 2—101(B)(1)(a)) are subject to suit under article I, section 17, of the Constitution; and (2) in any event, this is a logical construction to give to the statutory scheme. We respectfully disagree with both conclusions. Our major point of disagreement is that we deem the construction given to the Act is most unlikely to have been intended by the legislature. We also find sufficient ambiguity in the Act to permit us to consider legislative intent.

We cannot agree with the *Ritzheimer* opinion that under that court's interpretation of the Act, it "impose[s] greater restriction on and provide[s] additional remedies for claims of discrimination against employers of a certain size" while leaving the smaller employers to what the *Ritzheimer* court seemingly regarded as the less onerous consequences of suits at law under article I, section 17, of the Constitution (*Ritzheimer*, 173 Ill. App. 3d at 961-62, 527 N.E.2d at 1287). Rather, we conclude *Ritzheimer* would place far greater burdens on the smaller employer. Charges brought under the Act must be filed within 180 days of the alleged violation. (Ill. Rev. Stat. 1991, ch. 68, par. 7A—102(A).) Statutes of limitations concerning suits at law are much longer. Before action can be brought under the Act, investigations are made as to whether substantial evidence exists to support the charge (Ill. Rev. Stat. 1991, ch. 68, par. 7A—102(D)) and the expertise of the Commission is available to help effectuate a settlement (Ill. Rev. Stat. 1991, ch. 68, par. 7A—103). The smaller employer with fewer than 15 employees would have none of these protections.

Most employers would, undoubtedly, prefer to have a proceeding brought against them for discrimination tried before an agency whose policies would likely be consistent than subject themselves to the vagaries of a jury. Under the Act, only "actual damages" may be awarded. (Ill. Rev. Stat. 1991, ch. 68, par. 8A—104(B).) The smaller employers, who under *Ritzheimer* could be sued at law, would be exposed to possible award of punitive damages. We know of no analogous legislation in the field of employment which would place greater burdens of the nature involved here upon smaller employers than upon larger employers.

The *Ritzheimer* opinion also concluded that "[n]othing in the [Act] suggests that small employers should be left to discriminate as they wish." (*Ritzheimer*, 173 Ill. App. 3d at 963, 527 N.E.2d at 1288.) That opinion conceded, as does plaintiff here, that under article I, section 17, of the Constitution, the legislature may have had the power to limit or eliminate claims for gender discrimination, *i.e.*, create an exemption from liability from that provision for very small employers, but concluded the legislature had not done so. (*Ritzheimer*, 173 Ill. App. 3d at 962-63, 527 N.E.2d at 1288.) We conclude that the most reasonable interpretation of the statutory scheme intended here was that the definitional provision of section 2—101(B)(1) of the Act was intended to create such a "reasonable exemption."

As we have indicated, we agree that we can formulate a legislative intent which differs from the wording of the Act only if we find ambiguity in pertinent portions of the Act. We find that ambiguity ex-

ists in the use of the phrase "alleged civil rights violations" in section 8—111(C) of the Act in connection with the beginning language of section 1—103 of the Act (Ill. Rev. Stat. 1991, ch. 68, par. 1—103), which gives rise to section 1—103(D) of the Act, which limits the use of the phrase "civil rights violation" to acts specifically set forth in the Act (Ill. Rev. Stat. 1991, ch. 68, par. 1—103(D)). Section 1—103 of the Act begins as follows: "General Definitions. When used in this Act, *unless the context requires otherwise*, the term." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 68, par. 1—103.) That section then lists definitions for various subsections, including subsection (D), involving "Civil Rights Violation[s]." (Ill. Rev. Stat. 1991, ch. 68, par. 1—103(D).) Thus, the phrase "alleged civil rights violation" appearing in section 8—111(C) of the Act, which prohibits circuit court proceedings on such grounds, does not necessarily have the restricted meaning set forth in section 1—103(D) of the Act.

In addition to the unusual posture in which small employers would be placed in regard to charges of employment discrimination under plaintiff's interpretation of the Act, we must consider the ramifications of that interpretation upon other provisions in the overall structure of the Act. As we have indicated, the parties do not dispute that under article I, section 17, of the Constitution, the General Assembly may create "reasonable exemptions" from the rights created thereby. The General Assembly has not done so expressly. The Act makes certain express "exemptions" from *coverage of the Act* but not from coverage of the article. For instance, under article 2 of the Act, concerning "Employment" (see Ill. Rev. Stat. 1991, ch. 68, pars. 2—101 through 2—105), section 2—104 of the Act makes exemptions for activity concerning (1) *bona fide* qualifications; (2) veterans; (3) unfavorable military discharge; (4) ability tests; (5) merit and retirement systems; (6) training and apprenticeship programs; (7) police and firefighter retirement; (8) police and firefighter/paramedic appointment; and (9) citizenship status. (Ill. Rev. Stat. 1991, ch. 68, par. 2—104.) Presumably, these exemptions were placed in the Act so that employers would not be bothered by claims that the activities set forth in those categories were actionable. However, if plaintiff's theory is accepted, the effect of those provisions would be merely to subject those employers to actions at law in those areas rather than administrative proceedings.

Thus, the only reasonable construction we can give to the interplay between sections 8—111(C) and 2—104 of the Act is that the General Assembly intended that the conduct described in section 2—104 of the Act was intended to constitute "reasonable exemption"

50

from article I, section 17, of the Constitution. Similarly, the relationship between section 8—111(C) of the Act and section 2—101(B)(1)(a) of the Act creating the "15 or more employees" requirement in order to be defined as an "employer" is such that we can only conclude the legislature also intended that those employing fewer than the required number of employees be in the category of a "reasonable exemption" from the requirements of article I, section 17, of the Constitution.

The foregoing analysis conforms with that of the circuit court. We agree with the circuit court. Accordingly, we affirm the order of dismissal.

Affirmed.

STEIGMANN, P.J., and COOK, J., concur.